# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**CHERYL L. OWENS,**

      **Plaintiff,**

**v.**                                **Case No.  8:07-cv-13-T-30MSS**

**J.C. PENNEY WAREHOUSE,**

      **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment and Memorandum of Law in Support (Dkt. #22), Affidavit of Gary LaBell In Support of Defendant J.C. Penney's Motion for Summary Judgment (Dkt. #22-2), Affidavit of James Stika In Support of Defendant J.C. Penney's Motion for Summary Judgment (Dkt. #22-3), Plaintiff's Response(s) in Opposition to Motion for Summary Judgment (Dkts. #23, 25, 26, and 27), and Deposition of Cheryl Owens (Dkt. #28).  The Court, having considered the motion, responses, memoranda, exhibits, and being otherwise advised in the premises, concludes that Defendant's motion should be granted.

## Background

Plaintiff's claims.

_Pro se_ Plaintiff Cheryl L. Owens ("Plaintiff" or "Owens") brings an action against Defendant J.C. Penney Corporation, Inc. ("Defendant" or "JCP") based on allegations of age discrimination and retaliation.  Plaintiff's age discrimination claim is predicated on her

allegation that JCP promoted a younger applicant to the post of Receiving Unit Head, even though Plaintiff was allegedly more qualified for the position.

Plaintiff's retaliation claims are based on two events.  First, she claims that after she filed charges with the EEOC, JCP transferred her from the Auditing Department to the Operation Department.  Second, Plaintiff claims that after she filed another charge with the EEOC, JCP required her to participate in the Company's pilot Pay for Performance program.[1]

At some point in 2006, the record is unclear as to the specified date, Plaintiff filed two (2) charges with the EEOC.  In her Complaint, Plaintiff claims in general that: (1) she was discriminated against because of her age when JCP promoted a younger applicant instead of her; and (2) after she complained of sexual harassment and assisted in an investigation of JCP's employment practices, she was retaliated against by JCP on two occasions (first, when JCP transferred her to another department, and then again, when they made her participate in a Pay for Performance program).

Additionally, Plaintiff claims that she filed a "3rd charge of retaliation against them" after she opted to not participate in the Pay for Performance program and she was transferred to a non-Pay for Performance position.[2]  Once again, the record is unclear when such charge was filed or the nature of the charges contained therein.

---

[1] Plaintiff alleges that she filed EEOC Charge Case Nos. 511-2006-00745 and 511-2006-01995, however, Plaintiff has not alleged or attached documents showing what behavior on the part of JCP was complained of in the charges or the dates such charges were filed with the EEOC.

[2] *See* Complaint, Dkt. #2.

Undisputed Facts.

On March 21, 2004, JCP hired Owens as a Processing Clerk.  On October 17, 2004, Owens was promoted to Detail Assistant in the Auditing Department (second shift).

Between October 26, 2005, and November 1, 2005, JCP posted a job opportunity for the position of Receiving Unit Head for the second shift.  The Receiving Unit Head has responsibility for the Receiving Area in line with JCP's standard operating procedures.  Two people applied for the position - Plaintiff and Charleen Freemen ("Freeman").

Freeman was hired by JCP on the same date as Plaintiff.  Freeman, then 22 years old, was already in the Receiving Department, working as a Receiving Support Clerk.  Freeman was familiar with the operating procedures of the Receiving Department.  Freeman received a score of 392 points on her annual performance appraisal, and was rated "above expectations" in all but one of the appraisal's individual characteristics.  Freeman had a perfect attendance record.  Also, Freeman's manager recommended her for the Receiving Unit Head position.

Owens had no prior working experience in the Receiving Department.  Owens received a score of 304 points on her annual appraisal.  Owens received counseling on her attendance and Owen's manager specifically stated that he did not recommend her for the position.

In early November of 2005, JCP supervisors, Gary LaBell and Jim Strobusch, decided to promote Freeman to the Receiving Unit Head.

On or about November 19, 2005, upon being informed that she did not receive the sought after promotion, Plaintiff called the JCP Hotline to complain about discrimination. Initially, Plaintiff felt she was being discriminated against because she was white (and Freeman was black).[3]  During the same conversation with the JCP Hotline representative, Plaintiff claimed that Freeman was given an unfair advantage, because she had been trained to take over the position.

A few days later, on or about November 22, 2005, Plaintiff approached another JCP supervisor, Jeff Hallowell, and complained that a co-associate, named Rick Chopan, had been exhibiting lewd conduct (non-specific) and harassment towards both herself and another woman auditor, Nickenya Bryant.

Less than thirty (30) days after accepting the promotion, Freeman decided that she no longer wished to work as the Receiving Unit Head.  Instead, Freeman opted to transfer to a lower grade as a Processing Clerk.  During this time period, JCP reduced its inspection of shipments to Puerto Rico from 100% to approximately 25%.  The reduction required JCP to also make a reduction of staff.  JCP consequently reduced the number of Unit Heads from eighteen (18) to fifteen (15).  Thus, JCP did not re-post an opening for the Receiving Unit Head Position or offer it to Plaintiff upon Freeman's voluntary resignation and transfer.

On April 30, 2006, JCP implemented the Logistics Wage Structure and Common Merit Processing Plan (the "Plan"), a Company-wide consolation of Field Logistic job

---

[3] *See* Dkt. #29-4.

positions into job families.  As part of the Plan's implementation, the job title and functions of a Detail Assistant were integrated into that of a Merchandise Processing Associate.  As a result, Plaintiff's title changed from "Detail Assistant" to "Merchandise Processing Associate," but her rate of pay and schedule did not change.

At the end of June 2006, JCP again reduced the percentage of inspections of outgoing inventory, thereby reducing its need for Merchandise Processing Associates.  JCP directed all thirteen JCP warehouse centers to reduce staffing in order to accommodate the new standards.  As a result, JCP reduced its Merchandise Processing staff by two (2) associates - one from the first shift, and one from the second.  Because no one volunteered to be transferred to the Operations Department, all of the associates in the Audit Department were evaluated based on length of service with the Company, and if there was a tie, their performance appraisals were compared.

Only two Merchandise Processing Associates worked the second shift, Plaintiff and Andrew Breheny ("Breheny").  Both associates had the same hire date; thus, their most recent performance appraisals were compared (Plaintiff scored a 288 and Breheny scored a 292).[4]  Both Plaintiff and Breheny were offered first shift Merchandise Processing Associate positions within the Auditing Department.  Both declined the offer.  Breheny, having the higher performance appraisal rating, was given the option to remain in the second shift Merchandise Processing Associate's position, which he accepted.  Plaintiff was then

---

[4] *See* Stika Affidavit, Paragraph 12.

transferred to the Operations Department at the same job grade level, same pay and same schedule.

At the end of August 2006, JCP implemented a new Pay for Performance program, which tied an associate's compensation to production rate as opposed to the current flat, hourly rate.  Prior to participating in the Pay for Performance program, an associate's production would be tracked for four (4) consecutive weeks.  At the end of the four week implementation period, the associate's production level would determine their rate of pay, and depending on their production level, the associate could earn less or more than their current rate of pay.  However, an associate who participated in the pilot program would not be penalized with a decreased rate of pay even if their productivity average so warranted.

Plaintiff participated in the pilot Pay for Performance program during the month of September 2006.  At the end of the month, she had the option to remain in the Pay for Performance program or to return to a non-Pay for Performance position at the same grade level and pay as she had prior to her participation in the Pay for Performance program. Plaintiff choose to return to a non-Pay for Performance position.  At no time during Plaintiff's participation in the Pay for Performance program, or upon her transfer to a non-Pay for Performance position was her rate of pay decreased.  Plaintiff also maintained her previous title as a Merchandise Processing Associate.

## **Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor.  *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.   The evidence must be significantly probative to support the claims.  *Anderson*,  477 U.S. at 248-49.

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248;

*Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a conflict in substantial evidence to pose a jury question.  *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

<u>**Legal Analysis**</u>

**I.    Age Discrimination.**

Plaintiff alleges that Defendant failed to promote her in favor of a younger, less qualified employee as a result of discrimination based on age in violation of the Age Discrimination in Employment Act.

**A.    Age Discrimination in Employment Act ("ADEA").**

The protections of the ADEA are limited to persons over the age of 40.  The ADEA makes it unlawful "for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his/her compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

"In proving an age discrimination claim, a plaintiff can establish a prime facie case of discrimination through either direct evidence of discrimination or a variation of the four-part test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for circumstantial evidence."  *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).

### 1.      Direct Evidence.

Direct evidence is evidence which, if believed, proves the existence of the fact in issue without inference or presumption." *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998).  However, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, constitute direct evidence of discrimination." *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

In the instant case, after reviewing the record, the Court concludes that Plaintiff has not established any direct evidence of age discrimination.  Thus, we will examine whether Plaintiff has established a *prima facie* case of age discrimination based upon circumstantial evidence.

### 2.      Circumstantial Evidence.

When a plaintiff does not present direct evidence of age discrimination, he or she relies on circumstantial evidence and invokes the burden-shifting framework established in *McDonnell Douglas*.  *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1267 (11th Cir. 2001).  In *McDonnell Douglas*, the Supreme Court held that the plaintiff generally has the burden of establishing a prima facie case of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802. Establishing a prima facie case of discrimination creates a presumption of unlawful discrimination, and the employer must come forward with evidence of a legitimate non-discriminatory reason for its decision.  *Id*.  When the employer expresses one or more legitimate reasons for its actions, the presumption of discrimination evaporates, and the plaintiff must raise a genuine issue of material fact as to whether the reasons offered by the

defendant are pretextual. *Id*. at 804. In order to establish pretext, a plaintiff must present evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).

In order to prevail in an ADEA action, a plaintiff must first prove all prongs of a four-part test: (1) that plaintiff was a member of the protected group of persons between the ages of forty and seventy; (2) that plaintiff was subject to an adverse employment action; (3) that a substantially younger person filled the position; and (4) that plaintiff was qualified to do the job from which she was rejected. *See Pace v. Southern Railway System*, 701 F.2d 1383, 1386 (11th Cir. 1983). The underlying inquiry is "whether an ordinary person could reasonably infer discrimination from the facts shown if those facts remain unrebutted." *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435 (11th Cir. 1985). A determination of whether a prima facie case has been established "turns on whether the plaintiff has presented sufficient evidence to provide a basis for an inference that age was a factor in the employment decision." *Pace*, 701 F.2d at 1307; *see also Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997) (Eleventh Circuit held that in an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant-employer based its employment decision on an illegal criterion.)

The parties do not dispute that: Plaintiff was over 40; she was not promoted; the person promoted was significantly younger (22 years)[5]; and Plaintiff was qualified for the position. However, other than Plaintiff's own suspicions that they hired a younger applicant because she was "more vigorous looking, and was the favorite"[6], Plaintiff has offered no relevant or timely evidence to provide a basis for an inference that age was a factor in the decision not to promote her in November of 2005.

Furthermore, Defendant has offered evidence of a legitimate non-discriminatory reason for its decision. Specifically, Defendant has shown that Freeman: had a much higher appraisal rating than Plaintiff, perfect attendance (Plaintiff did not), prior experience and training within the Receiving department (Plaintiff never worked in the Receiving Department), and finally, was highly recommended by her immediate supervisor (Plaintiff was not recommended by her supervisor).

Thus, the burden shifts to Plaintiff to raise a genuine issue of material fact as to whether the reasons offered by the defendant are pretextual. In order to establish pretext, Plaintiff must present evidence sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. Upon a review of the pleadings, the Court concludes that Plaintiff failed to show

---

[5] The Eleventh Circuit has held a replacement who is only three years younger is sufficient to establish a prima facie case. *See Carter v. DecisionOne Corp.*, 122 F.3d 997, 1003 (11th Cir. 1997); *see also Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) (concluding that five year age difference between plaintiff and his replacement was sufficient to support a prima facie case of age discrimination).

[6] Dkt. #2, Complaint, Paragraph G.

any evidence sufficient to permit a reasonable fact finder to conclude that the reasons given by JCP for hiring Freeman instead of Plaintiff were pretextual.

For these reasons, the Court concludes that Plaintiff has not presented direct or circumstantial evidence that would provide a basis for an inference that age was a factor in promoting Freeman instead of Plaintiff. Accordingly, summary judgment is granted in favor of Defendant as to Plaintiff's age discrimination claims.

## II.   **Retaliation Claims**.

Plaintiff's retaliation claims appear to be based on JCP's downsizing efforts in June of 2006 (which led to Plaintiff's transfer from the Auditing Department to the Operations Department) and JCP's implementation of a Pay for Performance program in August of 2006 (which led to Plaintiff's transfer to a non-Pay for Performance position).

In order to establish a *prima facie* case of retaliation under Title VII, plaintiff must show: (1) that she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relation between the two events. *Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265-66 (11th Cir. 2001).

First, Plaintiff must show that she engaged in statutorily protected expression. Plaintiff claims to have complained to JCP supervisors regarding sexual harassment by co-associate Rick Chopan several times on or before November 2005. Plaintiff also claims that she filed three charges with the EEOC concerning claims of discrimination and retaliation. Plaintiff's internal complaints regarding sexual harassment and subsequent charges of

discrimination and/or retaliation with the EEOC constitute protected expression. Accordingly, the Court concludes that Plaintiff has sufficiently established the first prong of this analysis.

Second, Plaintiff must show that she suffered an adverse employment action as a result of engaging in statutorily protected expression. Defendants argue that Plaintiff cannot show that she suffered an adverse employment action, based on two reasons: (1) she was not demoted; and (2) her pay did not change.

An adverse employment action is "an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities or adversely affects his or her status as an employee." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). While the failure to promote does constitute an adverse employment action, the Eleventh Circuit has ruled that a change in assignment or duties with no loss of pay, benefits, or title, is not an adverse employment action. *See Gupta*, 212 F.3d 571, 587.

Thus, allegations and charges relating to JCP's failure to promote Plaintiff as the Receiving Unit Head constitute an adverse employment action. Plaintiff acknowledges,

however, that JCP's failure to promote her to Receiving Unit Head was unrelated to her alleged claims of retaliation.[7]

The allegations contained in Plaintiff's Complaint (and presumably in her EEOC charges) relating to Plaintiff's transfer from the Audit Department to the Operations Department, however, do not constitute an adverse employment action since the change in assignment did not result in loss of pay, benefits, or title.  Likewise, Plaintiff's allegations that she was discriminated against by JCP because they made her participate in the Pay for Performance program "against her will" do not constitute an adverse employment action since the change in assignment did not result in loss of pay, benefits, or title.  The record is devoid of evidence showing that Plaintiff suffered a loss of pay, benefits, or title.  Rather, Plaintiff remained a Merchandise Processing Associate, her pay did not change and she maintained the same grade level.  Accordingly, Plaintiff has failed to offer evidence supporting an adverse employment action as to Plaintiff's transfer from the Audit Department to the Operations Department or Plaintiff's voluntary assignment to a non-Pay for Performance Program position.

Since Plaintiff failed to establish the requisite second prong of a prima facie case of retaliation, it is not necessary for the Court to continue with an analysis of the third prong of

---

[7] *See* Dkt. #28, Owens's Deposition, Pages 53-54.  Plaintiffs states, in pertinent part: "The only time I claimed age discrimination was the situation with Charleen...[b]ecause she was younger, and they trained her during the posting situation and not giving me the same situation. That was very, very unfair and not very professional.  And it was age discrimination because she was younger than me and had less experience and less qualifications...[n]o, I'm not claiming age discrimination on the demotion.  I'm not claiming age discrimination on anything about that."

causal relation between her statutorily protected activity and an adverse employment action.

For these reasons, summary judgment is granted in favor of Defendant as to Plaintiff's retaliation claims.

It is therefore ORDERED AND ADJUDGED that:

1.    Defendant's Motion for Summary Judgment and Memorandum of Law in Support (Dkt. #22) is **GRANTED**.

2.    The Clerk is directed to enter **JUDGMENT** in favor of Defendant and against Plaintiff.

3.    The Clerk is also directed to **CLOSE** this case and terminate any pending motions.

**DONE** and **ORDERED** in Tampa, Florida on February 21, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2007\07-cv-13.msj 22.wpd